Bobby Darnell WHITE, et al.,
Plaintiffs-Appellees,

v.

CITY OF RICHMOND, et al.,
Defendants-Appellants.

Henry L. ROYAL, et al.,
Plaintiffs-Appellees,

v.

CITY OF RICHMOND, et al.,
Defendants-Appellants.

Anthony EVANS, et al.,
Plaintiffs-Appellees,

v.

CITY OF RICHMOND, et al.,
Defendants-Appellants.

Nos. 82–4591, 82–4592 and 82–4593.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1983.

Decided Aug. 15, 1983.

Joann M. Swanson, Gary R. Siniscalco, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendants-appellants.

Stephen P. Berzon, Michael Rubin, Altshuler & Berzon, San Francisco, Cal., for plaintiffs-appellees.

**460**

Before KENNEDY and BOOCHEVER, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

The City of Richmond, California, appeals from an order requiring it to pay attorneys' fees in three civil rights cases, pursuant to 42 U.S.C. § 1988.[1] We note jurisdiction and affirm.

BACKGROUND

In 1979 and 1980, twenty-seven black residents of the City of Richmond filed three civil rights actions against the City and other defendants. They alleged that the Richmond Police Department routinely harassed and beat black residents and then groundlessly charged the victims with offenses such as resisting arrest or interfering with the official lawful duties of an officer. All three cases sought individual damages and broad injunctive relief.

At the suggestion of the District Court, the parties entered into formal settlement negotiations which lasted about eleven months. In August, 1981, the parties settled on the terms of the injunctive relief; the court approved the consent decrees in September. Plaintiffs subsequently moved for an award of attorneys' fees. The court, 559 F.Supp. 127, granted the motion and applied a multiplier of 1.5, for a total award of $694,185.91.

DISCUSSION

The City first contends that the appellees are not entitled to an award of attorneys' fees because they are not "prevailing" parties under 42 U.S.C. § 1988, in spite of the District Court's finding to the contrary. The District Court's factual determination on this issue will not be set aside unless clearly erroneous.

■ Arguing that the District Court committed clear error, the City maintains that the consent decrees granted no significant new relief because they merely reiterated existing policies or the terms of similar consent decrees that were issued in 1976 and 1980. This argument is contradicted by the fact that the court carefully analyzed the changes imposed under the new consent decrees, and specifically found that they required significant revisions in a number of police practices.[2] Furthermore, the court found that the relief granted in the consent decrees was essentially the same as the injunctive relief sought in the complaints. Given the District Court's intimacy with this case, as well as its detailed evaluation of the results, we cannot conclude that its finding that the appellees were prevailing parties is clearly erroneous.

■ Having concluded that the appellees in fact prevailed, we must determine whether the amount of the District Court's award of attorneys' fees was proper. At the outset, we note that it is within the District Court's discretion to determine the amount of the award. *Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1941–1942, 76 L.Ed.2d 40 (1983). *Hensley* announced that the following considerations are to be examined. *Id.* at ——, 103 S.Ct. at 1940.

■ Initially, the number of hours reasonably expended by the attorney should be multiplied by a reasonable hourly rate. *Id.* at ——, 103 S.Ct. at 1938–1939. In this case, the District Court carefully examined the hours and deducted those that were unsubstantiated, unrelated or unreasonable. In all, the court deducted thirty-one hours; the remainder of 3,669 hours was found to be reasonable. The court then set an hourly rate for each of the appellees' three attorneys, based upon that which private counsel of similar experience, reputation, and skill could command in cases of similar complexity in the community. The hourly

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. "In any action or proceeding to enforce a provision of ... title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

2. The specific revisions are discussed *infra.*

rate for two of the attorneys was set at $120; the third's was set at $115. The court then arrived at a base fee award by totaling the products of each attorney's hours and hourly rate.

The City contends that the sheer volume of hours indicates duplicative or unnecessary efforts, for which compensation is not allowable. Indeed, a District Court should not award attorneys' fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for the services are clearly established. *Id.* at ————, 103 S.Ct. at 1943–1944 (Burger, C.J., concurring). In this case, the District Court painstakingly scrutinized the time records kept by the appellees' attorneys, which were specifically broken down by hour and task. Furthermore, the court's deduction of questionable hours shows that the burden of proof remained on the prevailing party throughout. We will not assume that the attorneys' efforts were duplicative or unnecessary where the District Court employed such caution.

The City further contends that the hourly rates of $120 and $115 show a clear abuse of discretion for two reasons: (1) prevailing counsel were not required to submit evidence of *their own actual* billing rates, and (2) the rates did not distinguish between various types of services performed by the same attorney. Neither reason is persuasive. First, we take judicial notice of the fact that many civil rights practitioners do not bill their clients at an hourly commercial rate. While evidence of counsel's customary hourly rate may be considered by the District Court, it is not an abuse of discretion in this type of case to use the reasonable community standard that was employed here. *See Dennis v. Chang,* 611 F.2d 1302, 1308 (9th Cir.1980) (endorsing an identical standard). Second, the use of a single average rate for each attorney is not necessarily an abuse of discretion.

Once the reasonable number of hours has been multiplied by the reasonable hourly rate, the District Court may consider other factors in order to adjust the fee upward or downward. *Hensley,* —— U.S. at ——, 103 S.Ct. at 1940–1941. Among these factors, the "degree of success" or "results obtained" is the most critical. *Id.* In this case, the District Court concluded that the results obtained by the consent decrees represented a significant achievement. Accordingly, the court applied a multiplier of 1.5 to the base fee awards. The City argues that the degree of the appellees' success does not justify the District Court's use of this multiplier factor, and that the District Court thereby abused its discretion. Furthermore, the City maintains that the court's conclusion does not embody findings that are sufficiently specific to meet the requirement of *Hensley.* We disagree.

The District Court found that the Richmond Police Department was required by the terms of the consent decrees to revise its policies or practices in these areas: (1) use of deadly and nondeadly force; (2) internal affairs; (3) training programs and requirements for rookies, and psychological counseling for all officers; and (4) personnel evaluation. The Department was also required to permit an independent monitor both to inspect its internal affairs and citizen complaint files, and to discuss individual cases with Department officials or with the City Attorney. Finally, the decrees included an affirmative action program that imposed high hiring and promotion goals for minorities in the Department. In addition, the District Court found that these changes went beyond existing policies and requirements, and that they were essentially the same as the plaintiffs' demands. Furthermore, the court concluded that these changes were a result of the plaintiffs' legal actions, rather than merely gratuitous changes made by the Department.

From these facts, we conclude that the appellees' degree of success was complete, in spite of some minor concessions made during the course of negotiations. *Hensley* requires that the plaintiffs' award must be reduced if they failed to prevail on any claims that were unrelated to the claims on which they succeeded. *Id.* at ——, 103

S.Ct. at 1940–1941. Because we have concluded that appellees' success was complete, that requirement does not apply here.

■ *Hensley* also requires that the plaintiffs achieve a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award. *Id.* It is not enough for the District Court to find that the plaintiffs obtained significant relief; the District Court must also consider the *relationship* between the extent of success and the amount of the award. *Id.* at ——, 103 S.Ct. at 1942–1943. In this case, the District Court's detailed summary of the degree of appellees' success was expressly intended by that court to justify its use of the multiplier factor; it follows logically that the court did, in fact, consider the relationship between the extent of success and the amount of the final fee award. We do not agree with the City that the District Court should have explained how each of the terms of the consent decrees was different from each of the City's existing policies. So long as it is clear on review that the District Court considered the relationship between the appellees' degree of success and the ultimate award of attorneys' fees, it is not necessary to have made specific findings comparing the results obtained with the pre-existing circumstances.

In arriving at the multiplier factor, the District Court did not limit its consideration to the degree of appellees' success; it also considered the contingent nature of that success. The court noted that because of the United States Supreme Court's decision in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the kind of injunctive relief sought here is generally unavailable against municipalities, except in extraordinary circumstances. The District Court reasoned that the appellees' attorneys must have taken these cases knowing that their chances of prevailing were remote. To achieve virtually complete success in the face of such odds seems to be precisely the kind of "exceptional success" to which the Supreme Court referred when it said: "[I]n some cases of exceptional success an enhanced award may be justified." *Hensley,* —— U.S. at ——, 103 S.Ct. at 1940.

While the appellees' degree of success and the contingent nature of success were the major factors in the District Court's decision to apply a multiplier of 1.5, there were other, minor factors. The court also considered: (1) the extent of proof needed to obtain injunctive relief; (2) the economic undesirability of these cases; and (3) the passage of two and one-half years between the filing of the initial complaints and the settlement. Taken together, these factors were sufficient to justify the District Court's use of discretion in awarding attorneys' fees.

Accordingly, we affirm the judgment of the District Court.

AFFIRMED.