Madge H. ELSER and Margaret E. Thomas, individually and on behalf of all others similarly situated, Plaintiffs,

v.

I.A.M. NATIONAL PENSION FUND, Defendant.

No. CV 78–2538–DWW (Sx).

United States District Court, C.D. California.

Jan. 31, 1984.

Robert D. Vogel, Pappy, Kaplon, Vogel & Phillips, Los Angeles, Cal., for plaintiffs.

Robert M. Simpson, Rose, Klein & Marias, Los Angeles, Cal., for defendant.

## ORDER SETTING ATTORNEY'S FEES AND DENYING PLAINTIFF'S MOTION TO MODIFY JUDGMENT

DAVID W. WILLIAMS, Senior District Judge.

### I.

In June, 1978, plaintiffs instituted this action alleging violations of the Labor-Management Relations Act of 1947, 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA) because certain persons were denied pensions when their employment was terminated although they allegedly satisfied age and service tenure requirements for the vesting of pension benefits. This court found in favor of the plaintiffs and its ruling was affirmed, 684 F.2d 648 (9th Cir. 1982), *cert. denied,* — U.S. —, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). In its Findings of Fact and Conclusions of Law, this court ruled that plaintiffs' counsel was entitled to attorney's fees and actual costs incurred but delayed determining the amount. The parties were unable to agree on the amount due plaintiffs' counsel. The plaintiffs now move that this court (1) award attorney's fees in the amount of $110,627.40 and costs in the amount of $3,498.27; and (2) modify its judgment regarding the interest rate on retroactive pensions. Each motion will be addressed separately.

### II.

A. *Attorney's Fees.*

■ Plaintiffs seek attorney's fees pursuant to section 1132(g) of ERISA which commits the allowance of such fees to the court's discretion. *See also Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069, 1073 (9th Cir.1983) (amount of attorney's fees award is within district court's discretion). In determining the amount of attorney's fees to award a prevailing party in an ERISA action, this court must consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to performing the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975), *cert denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Additionally, the court must consider (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980).

Courts and commentators have criticized the rigid application of the factors enunciated in *Kerr v. Screen Actors Guild, Inc., supra* (hereinafter referred to as the "*Kerr* factors") because they are redundant and imprecise. *See, e.g., Copeland v. Marshall,* 641 F.2d 880, 890 (D.C.Cir.1980) (en banc); Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?,* 126 U.Pa.L. Rev. 281, 286–87 (1977). As a result, several courts have employed an alternate approach to calculating fee awards termed "lodestar." This entails the calculation of a "lodestar" figure determined by multiplying the number of hours reasonably expended by counsel and the reasonable hourly rate prevailing in the community for comparable legal services. Once the lodestar figure is determined, the applicant for attorney's fees may request an adjustment of the lodestar figure based on (1) the risk

that the lawsuit would be unsuccessful and counsel would not be paid; (2) lost value of money due to delay in receipt of payment; or (3) quality of representation. *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1328 (D.C.Cir. 1982) (per curiam); *Copeland v. Marshall*, 641 F.2d at 892–94. Plaintiff wants this court to apply the lodestar analysis described above and adjust the lodestar figure upward by multiplying it by two.

The Ninth Circuit "has yet to directly approve the use of straight lodestar analysis." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir.1982). Rather, the Circuit has approved of an approach combining the "best features of both [the lodestar analysis and the *Kerr* factors]." *Id.* The most recent application of this approach is found in *White v. City of Richmond*, 559 F.Supp. 127 (N.D.Cal.1982), aff'd, 713 F.2d 458 (9th Cir.1983). Although *White* involved attorney's fees in civil rights cases, the analysis is most instructive. Under the standard enunciated in that case, the initial step in fixing an award of attorney's fees is to determine the number of hours reasonably expended by counsel, then multiply those hours by a reasonable hourly rate. "Once the reasonable number of hours has been multiplied by the reasonable hourly rate, the district court may consider other factors in order to adjust the fee upward *or* downward." [1] 713 F.2d at 461 (emphasis added). Those other factors are the *Kerr* factors. The court in *White* recognized that several of the factors are redundant and did not consider them. The court did not look at time and labor involved in the case, the skill needed to perform the legal service properly, skill, reputation and ability of the attorney, and the customary fee. Those factors involve considerations subsumed in the determination of the lodestar amount. 559 F.Supp. at 132–33 n. 6. Instead, the court placed paramount importance on the contingent nature of the case and the extent of success achieved by the attorneys, in determining the quotient by which the lodestar figure would be multiplied. The court considered the remaining *Kerr* factors but they were deemed "somewhat less significant." 559 F.Supp. at 134. It seems clear that this approach is not substantively different from that followed by the courts in *Copeland* and *National Ass'n of Concerned Veterans, supra*. Thus, this court will follow the lodestar plus multiplier approach and look to those cases for guidance in framing a fair and reasonable fee award.

### 1. Hours Reasonably Expended.

 The applicant for attorney's fees must present detailed information regarding hours logged and work done. *White v. City of Richmond*, 713 F.2d at 461; *National Ass'n of Concerned Veterans*, 675 F.2d at 1327. The applicant is entitled only to an award which reflects time reasonably expended. Thus, this court must make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *See Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Plaintiffs' counsel has submitted an appendix which explicitly details the nature of work done during this litigation and how much time was spent on each assignment. Counsel claims 346.7 hours. This court has independently reviewed the appendix and finds counsel's claim for hours worked to be reasonable.

### 2. Reasonable Hourly Rate.

 An applicant for attorney's fees must provide specific evidence of the prevailing rate in the community for the type of work he seeks an award. *National Ass'n of Concerned Veterans*, 675 F.2d at 1325. Affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases satisfy that requirement. *See id.* Also, evidence of "[r]ecent fees awarded by courts or through settlement

---

**1.** "Quality adjustments may be upward or downward. Thus, if a high-priced attorney performs in a competent but undistinguished manner, a decrease in the 'lodestar' may be necessary under the 'quality of representation' rubric because the hourly rate used to calculate the 'lodestar' proved to be overly generous." *Copeland*, 641 F.2d at 894.

to attorneys of comparable reputation and experience performing similar work proves helpful in setting an appropriate award. *Id.* In this case, plaintiffs' counsel surveyed six (6) local law firms and gathered information regarding the billing rate for attorneys with similar litigation experience in cases like this. Counsel determined that the prevailing hourly rate is $169.00. That figure was arrived at by averaging the rates for the lawyers at the respective firms. Defendant's counsel strongly contests the appropriateness of such a figure. This court finds plaintiffs' counsel's evidentiary showing to be insufficient support for his claim of $169.00 per hour.

■ Counsel's fee request is biased toward the high end of legal fees without substantial support in the form of exhibits or affidavits. The mere submission of a declaration in which one paragraph delineates the names of six law firms and their respective hourly rates with nothing more, is insufficient evidence to support counsel's fee request. At the very least counsel should have submitted substantive information regarding those attorneys and the nature of the work they performed which brought them those enviable legal fees. It would be an abuse of this court's discretion to grant counsel's request on such a bare showing. Furthermore, a survey of only six law firms in as large a legal community as Los Angeles can hardly be considered dispositive of the prevailing rate for similar legal services when there are numerous other firms doing similar work. In short, a more exhaustive showing is necessary to convince this court that the rate claimed is the prevailing rate.

■ This court's task is to determine the approximate market rate for counsel's service. *Id.* at 1326. The task has been made more difficult by counsel's bare showing. This court has several options available to it, including requiring counsel to make a further evidentiary showing. *See id.* at 1324–27. Such a request will result in further delays, however, and this case has

been litigated for six years already. Thus, this court will proceed to fix a fair and reasonable fee based on the information contained in the record.

■ In its endeavor to fix the fee award, this court is admonished that "[t]he best evidence would be the hourly rate customarily charged by the [applicant] himself or by his law firm." *Id.* at 1325. Thus, "the actual rate that [the applicant] can command in the market is itself highly relevant proof of the prevailing community rate." *Id.* at 1326. A good starting point to determine the fee is the retainer agreement between plaintiffs and counsel. This agreement, appended to plaintiffs' Memorandum of Points and Authorities as Exhibit A, provides that in the event the attorney's fees recovered by counsel "is less than one-fourth (¼), twenty-five percent (25%) of [the] net monetary recovery or sixty-five dollars ($65.00) per hour for all legal services rendered;" plaintiffs were to pay counsel the difference out of any net monetary recovery. The important reference here is the $65.00 per hour fee arrangement.[2] It would be rather presumptuous of this court to assume that the figure represents that amount counsel would have accepted at that time had the plaintiffs been fee-paying clients. The court is well aware of the fact that the fees attorneys charge clients are determined by factors similar to those set forth in *Kerr, supra.* There is no way of determining from the face of the agreement on what basis counsel in this case arrived at the $65.00 per hour figure. Because that figure was used as the basis for determining remuneration for counsel's services, however, it is reasonable to assume that $65.00 per hour was the minimum that counsel would consider as adequate compensation. Thus, this court considers $65.00 per hour to be the minimum that counsel is entitled to.

■ The defendant contends that a fee award in the range of $85.00 to $100.00 is

---

**2.** The court is mindful of the fact that this agreement was entered into at least six years ago. Therefore, any fee award will reflect consideration of inflation and the lessened value of the dollar.

appropriate in this case. It represents that its counsel billed at a rate of $100.00 per hour during the period of 1978 to 1982. Defendant's Response to Motion for Award of Attorneys' fees and Related Costs at 7. Using that information, this court believes that an award of $125.00 per hour is both fair and reasonable compensation for plaintiffs' counsel. Furthermore, the factors set forth in *Kerr* and *Hummell v. S.E. Rykoff & Co., supra,* prove that a larger award is not warranted.[3]

First, the time and labor required to litigate this case was not substantial. During the six year period that this case was litigated, counsel expended only 346.7 hours. The most time spent in any one year was the 111.2 hours expended in 1980. *See* Reply Memorandum of Points and Authorities, Exhibit B, at 28. Second, considering the relatively few number of hours spent on this case, counsel could not have been prohibited from other employment. Thus, his earning capacity could not have been hampered by taking this case. Third, contrary to counsel's exhortations, this case did not present such extremely difficult issues; neither were counsel's chances of prevailing as slim as he represents. His position is understandable because he has a financial stake in this matter and, undoubtedly, a more subjective view than this court. This case was tried in a matter of days on stipulated facts, however, and the issues to be resolved were similarly stipulated to. This is not to say that any attorney could have handled this case commendably. There is no doubt, however, that the task before plaintiffs' counsel was not as difficult as it could have been. Furthermore, there has not been established any degree of bad faith on the defendant's part which would warrant a larger fee. Finally, this court is advised to look at awards in

similar cases. In *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir.1983), the facts were similar to those in this case. In *Ursic* an employee brought an action under ERISA for wrongful deprivation of pension rights by contrived pretextual discharge prior to the vesting of such rights. Granted there was no pretext alleged or found in this case, but *Ursic* is sufficiently analogous and can be looked to for guidance. *Ursic* required a three-day bench trial and the appellate court concluded that "the facts were not complicated, and the legal problems not difficult." 719 F.2d at 674. The attorney for the prevailing party in that case was awarded $100.00 per hour for 102 hours of work. Recognizing that counsel in this case expended 346.7 hours and grappled with issues more difficult than that presented in *Ursic,* this court firmly believes that $125.00 per hour is a more than reasonable hourly rate.

(a) *the lodestar figure.*

The next step in this process is to compute the lodestar figure. Thus, 346.7 (hours reasonably worked) X 125 (reasonable hourly rate) is $43,337.50.

3. *Adjustments to the Lodestar.*

■ Once the lodestar figure has been determined, the applicant may request an adjustment of that figure. Plaintiff's counsel requests that the lodestar figure be multiplied by two (2) to adjust for the quality of representation given plaintiffs, or in the alternative to reflect the contingent nature of the case.

(a) *quality of representation.*[4]

■ "An upward adjustment for quality of representation is appropriate only

---

**3.** As noted in *Sapper v. Lenco Blade, Inc., supra,* the record must demonstrate that the court considered the factors in determining a reasonable award, but the court need not discuss each. 704 F.2d at 1073. Thus, only those factors which have special significance will be discussed.

**4.** *In White v. City of Richmond, supra,* the Ninth Circuit approved the District Court's consideration of the "degree of success" in determining

whether to multiply the lodestar figure. This court sees no difference between the "degree of success" factor or the "quality of representation" factor. In both instances, the relevant inquiry is whether the attorney for the prevailing party obtained an exceptional result or performed exceptionally well. *See, e.g., Copeland,* 641 F.2d at 893–94; *White,* 559 F.Supp. at 134. Thus the label a court attaches to this phase of the process is insignificant.

when the attorney performed exceptionally well, or obtained an exceptional result for the client." *Copeland,* 641 F.2d at 894. Such adjustments are not granted routinely or liberally but are reserved for truly exceptional cases. *National Ass'n of Concerned Veterans,* 675 F.2d at 1329. Because the lodestar figure reflects the general quality of the attorney's work, *Copeland,* 641 F.2d at 894, an upward adjustment is merited only in those cases where the attorney performs beyond the level that would be expected of an attorney commanding the hourly rate used to compute the lodestar figure. *See id.; Ursic,* 719 F.2d at 674; *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 376 (D.D.C.1983). This court does not find anything in the record which demonstrates that plaintiff's counsel performed beyond that level of advocacy expected of a lawyer commanding a $125.00 per hour fee.

■ Neither does the record demonstrate that the results achieved in this case are exceptional enough to warrant an upward adjustment to the lodestar figure. The relief obtained by plaintiffs was that due them: injunctive relief and retroactive pensions with interest. In order to be considered an exceptional result, it would have to be one not thought likely to be achieved. For example, in *White v. City of Richmond, supra,* the District Court recognized that in spite of the stringent requirements for obtaining injunctive relief against municipal police departments, the consent decrees obtained by plaintiffs resulted in significant procedural changes by the Richmond police department; changes much more extensive than one could have reasonably expected at the start of the litigation. 559 F.Supp. at 133–34. Plaintiffs in this case did not achieve such a result and an increase to the lodestar amount is not justified by this factor.

(b) *the contingent nature of the case.*
■ The contingency adjustment is designed to compensate for the possibility that the litigation would be unsuccessful and that no fee would be obtained. *Copeland,* 641 F.2d at 893. "Accordingly, some compensation for this factor is appropriate only if counsel would have received no significant remuneration if the suit were not successful." *National Ass'n of Concerned Veterans,* 675 F.2d at 1328. There is no doubt that plaintiffs' counsel's receipt of fees depended upon plaintiffs prevailing in the litigation. They are therefore entitled to a contingency adjustment. "Allowing a bonus because of contingency is a means of rewarding counsel for accepting and prevailing in a case that, at the outset, had a low probability of success on the merits." *Ursic,* 719 F.2d at 673. Thus, this court must assess the probability that plaintiffs would have lost this case and counsel not recover a fee. *Laffey,* 572 F.Supp. at 378. This is a rather imprecise task but a reasonable assessment of the risk counsel accepted can be made by considering (1) the legal and factual complexity of the case; (2) the probability of defendant's liability; and (3) the difficulty or ease with which damages could be proven. *Id.* This court has indicated above that this case was neither legally nor factually very complex. The parties stipulated to both the facts and the issues which made resolving this dispute much easier than it otherwise would have been. Neither were damages difficult to prove. The extent of damages were the pension benefits denied plaintiffs and the amount due was not difficult to calculate. Nothing about this case justifies a multiplier of two as plaintiffs request. They are entitled to an upward adjustment of the lodestar and this court considers a 1.2 multiplier to be well within reason. That figure represents the fact that plaintiffs in this court's estimation stood a better than even chance of prevailing. The issues presented were neither extremely difficult nor novel, and counsel did not expend a great deal of labor in litigating this case through the end. That figure also satisfies the policy of encouraging attorneys to take cases like this on a contingency basis.

*Summary.*

The lodestar figure of $43,337.50 is to be adjusted upward by the 1.2 multiplier.

**1382**

Thus, plaintiffs are awarded attorney's fees in the amount of $52,005.00.

### B. *Costs.*

Plaintiffs are also awarded costs and the amount is to be determined by the staff attorney of this court's administrative office. Counsel for both parties must therefore file the appropriate papers with that person.

### III.

### A. *Modification of Judgment.*

When this court entered judgment in this case, it ruled that certain class members were entitled to a retroactive pension at seven percent (7%) interest annually. Plaintiffs contend that the seven percent interest rate should no longer apply because of the enactment of new federal and state interest rate statutes which establish higher interest rates. This court also ruled that certain other employees would be entitled to a pension upon leaving their jobs should they apply for a pension. Plaintiffs argue that because of the three year delay in the implementation of this court's order due to protracted litigation, the order should be amended to provide post-judgment interest for those employees. This court's order was final and cannot be disturbed unless plaintiffs can demonstrate that there are equitable reasons warranting relief from this judgment.

Plaintiffs contend that this court's order was not final because the issue of attorney's fees is still outstanding. A judgment is final when all issues pertaining to the cause of action have been resolved. It is well settled, however, that issues relating to attorney's fees are collateral to the cause of action and not pertinent to the merits of the case. *See White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). In fact, the issue of attorney's fees arises only after the case has been resolved. Plaintiffs contend that even if this court's order was final, relief can be granted under Rule 60(b)(5) of the Federal Rules of Civil Procedure. This court fails to see the relevance of that rule

here. Rule 60(b)(5) is raised where the moving party deems it no longer equitable for the judgment to have prospective application. In cases involving this rule, the moving party is typically the party against whom the judgment had been entered and a motion is made for relief *from* the judgment. Thus, the logical party to bring this motion is the defendant. Even if the plaintiffs were an appropriate party to bring this motion, a strong showing is required before a judgment is modified. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2863 (1973). The moving party must establish that it is suffering hardship so extreme and unexpected that it constitutes oppression. *See Humble Oil & Refining Co. v. American Oil Co.*, 405 F.2d 803, 813 (8th Cir.1969). The gravamen of plaintiffs complaint is that they will not earn the maximum allowable interest on their pensions. This court fully understands that one wants to maximize his income, but such discomfort is not the sort of extreme hardship which justifies a modification of a final judgment. Plaintiffs' motion is denied.

IT IS SO ORDERED.