**BIRTH CONTROL CENTERS, INC.,** East Gyn Center, Inc., Northland Family Planning Clinic, Inc., Northland Family Planning Clinic West, Inc., Leon A. Hockman, M.D., Richard Goldfine, M.D., Julio B. Acosta, M.D., Enrique B. Gerby, M.D., Youl Choi, M.D., Plaintiffs,

v.

**Maurice S. REIZEN, M.D., Director, Michigan Department of Public Health, Defendant.**

Civ. A. No. 80–70508.

United States District Court, E.D. Michigan, S.D.

Dec. 4, 1986.

On Motion to Reduce Hourly Rate, Jan. 9, 1987.

Frank Susman, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for plaintiffs.

Denise Chrysler, Asst. Atty. Gen., Public Health Div., Lansing, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs sued for judgment declaring Michigan's regulation of abortion clinics unconstitutional.[1] I rejected plaintiffs' equal protection claims, but I did invalidate two individual regulations. 508 F.Supp. 1366 (1981). The United States Court of Appeals for the Sixth Circuit affirmed these rulings and, after considering an in-

tervening decision of the United States Supreme Court,[2] invalidated seven more regulations. 743 F.2d 352, 360–361, 367–368 (1984). Only three regulations survived attack.[3] 743 F.2d at 368.

Plaintiffs petition, pursuant to 42 U.S.C. § 1988, for an award of attorney fees. I scheduled a settlement conference for November 10, 1986. After the Assistant Attorney General reported on October 22, 1986 that the Attorney General had denied her authority to settle,[4] I adjourned the conference. I am always reluctant to decide issues more efficiently left to negotiation, but the Attorney General's posture leaves me no choice.

## I. PREVAILING PARTY STATUS

Section 1988 authorizes an award only for "the prevailing party." Defendant makes the specious claim that plaintiffs did not prevail because they failed to invalidate the regulatory scheme as a whole. Plaintiffs need not win everything they seek to justify a fee award; they prevail " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir.1978)). By successfully attacking nine individual regulations, plaintiffs easily satisfy this test.

## II. LODESTAR ANALYSIS

Section 1988 authorizes "a reasonable attorney's fee." The lodestar, which is the product of hours reasonably spent times a reasonable hourly rate, "is presumed to be the reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). *See also Pennsylvania v. Delaware Valley Citizens' Council*

1. Mich.Comp.Laws §§ 333.20801–20821; Mich. Admin.Code rr. 325.3801–3877 (1979).

2. *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983).

3. In addition, the circuit court remanded one regulation for additional consideration. 743 F.2d at 368.

4. The Assistant Attorney General reported on November 7, 1986 that she had "limited" authority to settle. She refused to disclose the limit.

*for Clear Air,* — U.S. —, — – —, 106 S.Ct. 3088, 3095–3099, 92 L.Ed.2d 439 (1986); *Hensley,* 461 U.S. at 433–434, 103 S.Ct. at 1939–1940.

### A. Hourly Rates

■ Plaintiffs' trial counsel, Bette Huster ("Huster"), requests $75 per hour. Appellate counsel, Frank Sussman ("Sussman"), requests $175 per hour. Defendant admits that Huster's request is reasonable, but objects to Sussman's request.

I find both requests reasonable. Both lawyers ask for their customary rate. Huster Affidavit (June 30, 1986) at ¶ 5; Sussman Affidavit (July 8, 1986) at ¶ 3(5). Sussman's rate is reasonably higher than Huster's rate because he is an abortion litigation expert who has participated personally in landmark Supreme Court litigation and "dozens of abortion-related cases since 1969." Sussman Affidavit at ¶ 3(9). Moreover, Sussman's request is comparable to effective rates other courts have recently awarded him.[5]

### B. Hours

■ Huster requests compensation for 339.75 hours. Her two-hour request for August 4, 1980 and her one-hour request for April 24, 1980 are unreasonable because of inadequate description. The August entry contains no description, and the April entry contains only the unintelligible phrase: "Phone call to Lansing re Dentists, Cdrs., etc." Huster Affidavit (attached time sheets). Her request of 12.75 hours for press briefings is also unreasonable. *See, e.g., Zaldivar v. City of Los Angeles,* 590 F.Supp. 852, 858 (C.D.Cal.1984), *rev'd on other grounds,* 780 F.2d 823 (9th Cir. 1986). Huster's remaining 324 hours are reasonable and compensable. Sussman requests compensation for 81.2 hours, all of which are reasonable and compensable.

■ Defendant objects to eighteen hours Huster claims for administrative tasks such as scheduling hearings, securing signatures on affidavits, and filing papers with the court. These tasks are compensable. *See, e.g., Johnson v. Georgia Highway Express,* 488 F.2d 714, 717 (5th Cir. 1974). Although clerical workers are often able to handle these chores, sometimes an attorney's personal attention is necessary to insure accuracy and reliability. Huster's claim for a small number of hours at only $75 per hour is reasonable.

■ Defendant also objects that Huster exhibits lack of billing judgment and inefficiency by claiming 1.5 hours for a file review before filing the complaint, 1.5 hours for review of a four-page opinion, and approximately 60 hours for preparation of trial memoranda. These requests are not facially unreasonable, and defendant submits nothing but insinuation suggesting that a reasonable attorney of Huster's experience and billing rate would spend less time on these tasks. The requests are reasonable.

■ Defendant objects to hours claimed by Sussman for two trips between Sussman's Kansas City office and Detroit, and insists that plaintiffs should have retained a local attorney. Plaintiffs retained Sussman because of his unique experience, expertise, and reputation. The few hours he spent traveling between Kansas City and Detroit are reasonable. *Cf. Danny Kresky Enterprises v. Magid,* 716 F.2d 215, 216–217 (3d Cir.1983) (instructing district court to compensate 56.3 hours spent traveling between attorney's Philadelphia office and Pittsburgh court where prevailing plaintiff retained attorney because of his experience and expertise).

■ Defendant also objects to Sussman's request for 8.3 hours (including travel time between Kansas City and Detroit) for a June 26, 1982 conference with plaintiffs. Defendant claims the time is unreasonably duplicative because Sussman used it to learn about facts already known to Huster. Plaintiffs justifiably retained ad-

---

**5.** Sussman has received four awards since January 1, 1984. In each case the court set his hourly rate at $150 per hour. One court awarded a 25 percent multiplier for an effective rate of $187.50. Another court awarded a 33⅓ percent multiplier for an effective rate of $200 per hour.

ditional counsel for appeal. Sussman reasonably spent a few hours getting to know his clients, discussing appeal strategy with them, and absorbing basic information about the case.

■ Finally, defendant objects to Sussman's request for 4.6 hours spent seeking an injunction preventing defendant from enforcing the challenged regulations against a non-party clinic during the appeal. Although plaintiffs never moved for class certification, the case directly affects all persons similarly situated to plaintiffs. Moreover, defendant's counsel assured me in writing that he would not enforce the regulations against plaintiffs during the appeal.[6] Under these circumstances, Sussman's request is reasonable.

## C.  Lodestar Calculation

| Attorney | Hours | Rate | Lodestar |
|----------|-------|------|----------|
| Huster | 324.00 | $ 75/hr. | $24,300 |
| Sussman | 81.20 | $175/hr. | $14,210 |

## III.  ADJUSTMENTS TO THE LODESTAR

### A.  Reduction

■ Defendant urges me to reduce the lodestars by an unspecified percentage to reflect what he characterizes as limited success. Although plaintiffs failed to sustain every one of their theories, they achieved their basic goal of freeing clinics that offer first-trimester abortions from any state health regulation having "significant impact" on a woman's right to abort. *Akron*, 462 U.S. at 430, 103 S.Ct. at 2492. This case does not neatly separate into discrete issues; it involves a common factual core:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.... [C]ounsel's work on one claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v.*

*County of Los Angeles*, 8 [Empl.Prac. Dec. (CCH) ¶ 9444 (C.D.Cal.1974)], at 5049....

> ... In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 434–435, 103 S.Ct. at 1939–1940. There is no basis to reduce the lodestars.

### B.  Enhancement

■ Plaintiffs urge me to enhance their lodestars by ten percent per year for payment delays. An alternative to percentage enhancements is calculation of the lodestar at current, rather than historical, billing rates. *See, e.g., In re Agent Orange*, 611 F.Supp. 1296, 1327 (S.D.N.Y.1985). Because Sussman's current and historical rates are identical (Sussman Affidavit at ¶ 3(5)), I need not enhance his lodestar. Although Huster's current rate is apparently higher than her historical rate,[7] I decline in my discretion to increase her award. *See Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 274–276 (6th Cir.1983) (no abuse of discretion in denying an enhancement for a four-year delay). Much of the delay is due to plaintiffs' appeal, without which plaintiffs may not have been prevailing parties, and to the inexplicable lapse of almost two years between the appellate decision and plaintiffs' first request for attorney fees. Moreover, the Supreme Court is beginning to frown on routine adjustments of lodestars. *See, e.g., Delaware Valley*, —— U.S. at ——, 106 S.Ct. at

---

6.  May 4, 1981 letter from Assistant Attorney General Walter Kron.

7.  Huster's affidavit does not state a current rate, but Sussman claims it is $100 per hour. Sussman Affidavit at ¶ 3(5).

3090 (lodestar modifications are only for "rare" or "exceptional" cases); *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548 (the lodestar "is presumed to be the reasonable fee").

## IV. COSTS

■ Two separate theories support plaintiffs' request for costs:

> Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and these are authorized by section 1988....
>
> Other costs are on a different footing. These include those costs incurred by a party to be paid to a third party, not an attorney for the case, which cannot reasonably be considered to be attorney's fees.... These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps. Most of these expenses have long been recoverable, in the court's discretion as costs, pursuant to 28 U.S.C. § 1920.

*Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Huster requests costs of $5,162.92, including $1,000 for "Cardinal Consultations," and $106 for "Palmer Consultations." In response to my request for additional information on these two items, Huster reports that Cardinal is an attorney who worked on the appellate brief, and that Palmer is my Official Court Reporter. These consultation costs are not allowable under either § 1988 or § 1920. Her remaining $4,056.92 in costs are allowable. Sussman requests $4,701.17 in costs, all of which I allow.

■ Defendant objects to an award of any appellate costs because the circuit court's mandate states: "Each party is to bear its own costs on appeal." (Nov. 1, 1984). The statement applies only to costs recoverable pursuant to Fed.R.App.P. 39(a); it does not bar recovery under § 1988. I allow plaintiffs' appellate costs pursuant to § 1988.

## V. SUMMARY

I award Huster $24,300 in attorney fees and $4,056.92 in costs for a total of $28,-356.92. I award Sussman $14,210 in attorney fees and $4,701.17 in costs for a total of $18,911.17. Interest shall accrue pursuant to 28 U.S.C. § 1961 from the date judgment is entered on this award.

IT IS SO ORDERED.

## ON MOTION TO REDUCE HOURLY RATE

■ I awarded plaintiffs' lead appellate counsel, Frank Sussman ("Sussman"), an attorney fee of $175 per hour pursuant to 42 U.S.C. § 1988. *See* pages 194–195, 196. Defendant cites *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir.1986), and moves to reduce the hourly rate to $80.

In *Coulter*, Robert Belton ("Belton") requested an hourly rate of $110 for time spent in 1982 and $125 for time spent in 1983–1984 on behalf of the prevailing plaintiff in an employment discrimination case. Belton was a law professor without a regular law practice who assisted an experienced trial lawyer. The district court awarded an hourly rate of $85 for 1982 time and $110 for 1983–1984 time. The United States Court of Appeals for the Sixth Circuit affirmed:

> [H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question.
>
> ... [The award] reasonably reflect[s] the prevailing market rates for lawyers in this field in Nashville, Tennessee....

*Coulter*, 805 F.2d at 149. Defendant claims the market rate for competent Detroit attorneys is $80 per hour, and argues that *Coulter* requires me to calculate Sussman's award at that rate.

Defendant misinterprets *Coulter* as arbitrarily limiting fee awards to the market rates of "competent" attorneys even when the fair market value of particular services exceeds those rates. *Northcross v. Board of Education*, 611 F.2d 624 (6th Cir.1979),

*cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980), which has governed fee awards for over seven years, mandates an hourly rate equal to the fair market value of the services actually provided and recognizes that an attorney's regular billing rate normally reflects this value:

> In determining what the level of compensation ... should be, the court should look to the fair market value of the services provided. In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney....
>
> Focusing on the fair market value of the attorney's services will best fulfill the purposes of the Fee Awards Act....

*Northcross,* 611 F.2d at 638. *See also Louisville Black Police Officers Organization v. Louisville,* 700 F.2d 268, 277 (6th Cir.1983) ("The fair market value of services is the proper standard...."). The *Coulter* panel makes no effort to invalidate this standard. *Cf. Timmreck v. United States,* 577 F.2d 372, 376 n. 15 (6th Cir.1978) ("One panel of this Court cannot overrule the decision of another panel; only the Court sitting *en banc* can overrule a prior decision."), *rev'd on other grounds,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). It simply applies the standard to the peculiar circumstances of a fee petitioner without a regular law practice. *See Northcross,* 611 F.2d at 638 ("For those attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance."); *Louisville Black Police,* 700 F.2d at 276–278.

Unlike Belton, Sussman has a regular law practice. He is an abortion litigation expert who normally charges $175 per hour and who regularly receives comparable rates in court awards. *See* pages 194–195. My award of $175 per hour recognizes the market value of Sussman's services; *Coulter* does not require that he receive less. I reject defendant's attempt to twist *Coulter*'s reasonable application of *Northcross* into an arbitrary rule that would require me to ignore differences in the skill, experience, and expertise of fee petitioners, and that would ultimately drive the most able and experienced attorneys out of civil rights advocacy.

Accordingly, defendant's motion is DENIED.

IT IS SO ORDERED.