861 F.2d 603
 57 USLW 2296
 Rita MONTERO; Delfina Maria Garcia; Francisco Coca;
Apolinar Rael, Plaintiffs-Appellees,
v.
Natalie MEYER, Secretary of the State of Colorado; State of
Colorado, and Official English Committee; Barbara Murray
Philips; Mary Ann Carlos; Thaddeus F. Gembczynski; Chong
Cha Woodfill; Violette Mehle Cordova, Defendants-Appellants.
 Nos. 88-2469, 88-2470.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 1, 1988.
 
 Catharyn A. Baird, Denver, Colo., for defendants-appellants Natalie Meyer, Secretary of the State of Colo., and State of Colo.
 Shannon A. Robinson (Richard J. Spelts and Jeffrey A. Esses with her, on the briefs) of Spelts & Robinson, Denver, Colo., and James K. Kreutz of James K. Kreutz & Associates, P.C., Englewood, Colo., for defendants-appellants Official English Committee, Barbara Murray Philips, Mary Ann Carlos, Thaddeus F. Gembczynski, Chong Cha Woodfill, and Violette Mehle Cordova.
 Barry D. Roseman (Kenneth A. Padilla and Henry J. Feldman with him, on the brief), Denver, Colo., for plaintiffs-appellees.
 Richard P. Fajardo, Antonia Hernandez, and Jose Garza, Mexican American Legal Defense and Educational Fund, Los Angeles, Cal., and Sara Rios, Center for Constitutional Rights, New York City, as amicus curiae.
 Julius L. Chambers, Charles Stephen Ralston, and Sherrilyn A. Ifill, NAACP Legal Defense and Educational Fund, Inc., New York City, David H. Miller, American Civil Liberties Union Foundation of Colorado, Inc., Denver, Colo., and Pamela S. Karlan, University of Virginia, Charlottesville, Va., as amicus curiae.
 Before MOORE, BALDOCK and BRORBY, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court preliminarily enjoining the Secretary of State of Colorado from conducting an election on a proposed amendment to the state constitution initiated and circulated by members of the Official English Committee. 696 F.Supp. 540. The district court held that the Voting Rights Act, in particular 42 U.S.C. Sec. 1973b(f)(4), applies to initiative petitions. As a consequence, the district court invalidated petitions printed only in English that were circulated in counties in which printed election materials must be bilingual. The court then granted plaintiffs' motion for preliminary injunction. We conclude the district court erred in finding the Voting Rights Act applies to initiated petitions and hold therefore the preliminary injunction was improvidently granted.
 
 
 2
 In accordance with provisions of state law, Colo.Rev.Stat. Sec. 1-40-101 (1981), defendants Barbara Philips, Mary Ann Carlos, Thaddeus F. Gembczynski, Chong Cha Woodfill, Violette M. Cordova, and the Official English Committee submitted to the Secretary of State[1] an original petition proposing an amendment to the state constitution. Thereafter, the petition progressed through state procedures for the examination of the petition, and the establishment of a ballot title and submission clause, Colo.Rev.Stat. Sec. 1-40-101, before being returned to the private defendants for printing and circulation. Ultimately, the defendant Secretary of State certified the measure for the ballot, finding the private defendants had obtained more than the number of signatures required to submit the measure to the electorate. Colo.Rev.Stat. Sec. 1-40-105. Having failed in their efforts to halt the circulation of these petitions at the state level, plaintiffs Rita Montero, Delfina Maria Garcia, Francisco Coca and Apolinar Rael commenced this action in the federal court for the District of Colorado. Plaintiffs asserted in their complaint:
 
 
 3
 Defendants' actions ... violate 42 U.S.C. Sec. 1973(a), in that they constitute a standard, practice, and/or procedure imposed and/or applied by Defendants Meyer and State in a manner that results in a denial or abridgement of the right of any citizen of the United States to vote and participate in the electoral process, in contravention of the guarantees set forth in 42 U.S.C. Sec. 1973b(f)(4), in that Defendants provided material or information relating to the electoral process only in the English language. In addition, the ... materials were made available only in the English language, in violation of 42 U.S.C. Sec. 1973aa-1a(c).
 
 
 4
 Plaintiffs further alleged that more than 61,000 signatures on the circulated petitions were invalid because they were obtained in counties designated as bilingual and thus subject to the Voting Rights Act. Plaintiffs moved for a preliminary injunction enjoining the holding of an election on the initiated measure.
 
 
 5
 The district court agreed with plaintiffs and granted the requested relief. The court ruled the minority language provisions of the Voting Rights Act, 42 U.S.C. Secs. 1973b(f)(4) and 1973aa-1a(c), govern initiative petitions. The court supported its conclusion by reference to guidelines adopted by the Attorney General of the United States. Disposing of the defendants' contention that the Act did not apply to the circulation of petitions, the district court held:
 
 
 6
 This contention is contrary to one of the United States Justice Department's implementing regulations for the Voting Rights Act. Section 55.19(a), 28 C.F.R., provides, in pertinent part:
 
 
 7
 "A jurisdiction required to provide minority language materials is only required to publish in the language of the applicable language minority group materials distributed to or provided for the use of the electorate generally. Such materials include, for example, ballots, sample ballots, informational materials, and petitions." (District Court's emphasis.)
 
 
 8
 * * *
 
 
 9
 Deference to the interpretation of the agency charged with enforcing the law is a familiar doctrine. Here the Justice Department's regulation is entitled to deference as the only available, authoritative interpretation....
 
 
 10
 In addition, the court concluded the actions of the governmental defendants and other state officers constituted "state action" within the meaning of Secs. 1973b(f)(4) and 1973aa-1a(c). Finding the public interest "clearly supports enforcement of the bilingual provisions of the Act," the court granted the motion for preliminary injunction.
 
 
 11
 The only issue on appeal is whether the district court erred in granting the injunction. As we noted in Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d 1268, 1270 (10th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988):
 
 
 12
 A district court may issue a preliminary injunction if the moving party establishes:
 
 
 13
 (1) substantial likelihood that the movant will eventually prevail on the merits; ...
 
 
 14
 Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980).
 
 
 15
 The scope of appellate review of a district court's discretionary grant of a preliminary injunction is narrow. Unless the district court ... commits an error of law ... the appellate court may not set aside the injunction. (Citations omitted.)
 
 I.
 A.
 
 16
 The appropriate place to begin our analysis of whether the plaintiffs established the likelihood that they would prevail on the merits is the relevant section of the Voting Rights Act (the Act). The controlling provision, 42 U.S.C. Sec. 1973b(f)(4), states:
 
 
 17
 Whenever any State ... subject to the prohibitions [against discrimination against citizens of language minorities] provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable language minority group as well as in the English language. (Emphasis added).
 
 
 18
 * * *
 
 
 19
 See also 42 U.S.C. Sec. 1973aa-1a(c) (almost identical language relating to bilingual election requirements). Emphasis of the essential language of Sec. 1973b(f)(4) is important because it makes clear that its minority language provisions apply only to certain documents. Those documents pertain to "registration or voting" and "the electoral process." Unfortunately, there is not a definition within the framework of the Act which discloses whether these terms apply to initiative petitions, or even whether the circulation of petitions is an act of "voting" or part of the "electoral process." We are therefore left with the difficult task of construing the Act to seek the answer to these questions.
 
 
 20
 However, in the context of the preliminary injunction proceedings, this statutory provision burdened plaintiffs with proving that: (1) the petitions were either "voting notices, forms, [or] instructions" or that they constituted "information relating to the electoral process," and (2) the petitions were provided by the state. We conclude plaintiffs proved neither of these requirements.
 
 
 21
 Plaintiffs contend the petitions circulated in this case are governed by the Act because they are materials "required by law prerequisite to voting." 42 U.S.C. Sec. 1973l (c)(1). Consequently, because the circulation of petitions is essential to obtaining the number of signatures necessary to place a measure on the ballot, the act of circulation is a "prerequisite to voting." Plaintiffs then conclude that because any "action prerequisite to voting" is "voting" by definition, the circulation of petitions is "voting" within the meaning of the Act. We believe this is an overly broad and misconceived construction of the statute.
 
 
 22
 First, one must carefully read the statute:
 
 
 23
 The term[ ] "vote" ... shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.
 
 
 24
 42 U.S.C. Sec. 1973l (c)(1). The word "vote" involves actions pertinent to registering one's choice at a special, primary, or general election. Therefore, matters which are "prerequisite to voting" must be interpreted to be those which relate directly to the casting of a ballot. This interpretation accords with the common meaning of the word "vote." "[T]he expression of one's will, preference, or choice, formally manifested by a member of ... a body of qualified electors, in regard to the decision to be made by the body as a whole upon any proposed measure...." Black's Law Dictionary 1414 (5th ed. 1979). "[The] formal expression of opinion or will in response to a proposed decision"...." Webster's Third New International Dictionary 2565 (3rd ed. 1981).
 
 
 25
 Implicit in both the statutory and the common definitions of the concept of voting is the presence of a choice to be made. One ordinarily votes to pick one candidate or another, or one votes for or against the adoption of an initiated measure. Thus, applying the concept of voting to a process which provides no choice defies the commonly accepted usage of the term.
 
 
 26
 The circulation of a petition to initiate a constitutional amendment is just such a process. At oral argument, counsel for plaintiffs conceded that the Colorado initiative law does not provide an opportunity for a voter to express opposition to the measure contained in the petition. Indeed, under the state law one can only agree to place the matter on the ballot, and that agreement is expressed by signing the petition. Thus, during the circulation process, those who are opposed to the adoption of the measure are limited to refusing to sign the petition or speaking out against it. There is no other means to register opposition under the Colorado procedure until the measure reaches the ballot. We therefore conclude that the "electoral process" to which the minority language provisions of the Act apply does not commence under Colorado law until the Secretary of State certifies the measure is qualified for placement upon the ballot, and that signing of an initiated petition is not "voting."
 
 
 27
 We liken the circulation of a petition to the process of nomination. A candidate for office gets on the ballot by nomination. An initiated constitutional amendment gets on the ballot by petition. However, the process for selecting or rejecting either the candidate or the measure cannot take place until both qualify for the ballot. At the same time, a candidate who is not nominated, and an initiated measure which fails to collect sufficient support, are never voted on by the electorate. Thus, even though the acts of preparing the candidate or the measure for the ballot are prerequisite to voting, it is only in the temporal sense.
 
 
 28
 In the timing of events, a nomination must precede a vote. Hence, nomination and voting are two different and mutually exclusive acts by definition.[2]B.
 
 
 29
 The issue whether the Act applies to the petition process has not arisen frequently. We, the district court, and the parties, have found only three cases in which the question has been presented. Gerena-Valentin v. Koch, 523 F.Supp. 176 (S.D.N.Y.1981); Zaldivar v. City of Los Angeles, 590 F.Supp. 852 (C.D.Cal.1984) (Zaldivar I), and Zaldivar v. City of Los Angeles, 780 F.2d 823 (9th Cir.1986) (Zaldivar II). Gerena-Valentin and Zaldivar I hold the Act is inapplicable. Zaldivar II is inapposite.
 
 
 30
 In Zaldivar I, the district court found the action frivolous and imposed sanctions upon plaintiff's counsel in accordance with Fed.R.Civ.P. 11. Counsel subsequently appealed only the sanctions; therefore, only the applicability of Rule 11 was addressed by the Ninth Circuit. In the discussion of that issue, the court indicated the Act applied to the petition process, but the observation was the purest of dictum. Although the district court in our case found the dictum persuasive, we do not.
 
 
 31
 Instead we recognize the focus of Zaldivar II was to test whether counsel had asserted an arguable claim by contending the Act applied to the petition process. To place the trial court's contrary conclusion into the Rule 11 context, the Ninth Circuit stated:
 
 
 32
 We believe a plausible, good faith argument can be made by a competent attorney to the contrary ... Giving section 1973aa-1a the "broadest possible scope," (citing Allen v. State Board of Elections, 393 U.S. 544, 566 [89 S.Ct. 817, 832, 22 L.Ed.2d 1] (1969)), we have no difficulty in concluding that a competent attorney, after reasonable inquiry, could argue in good faith that a notice of intention to recall an office holder provides information relating to the electoral process.
 
 
 33
 Zaldivar II, 780 F.2d at 833 (emphasis added). The court then proceeded with its discussion of the Act to illustrate just how a good faith argument could be made.
 
 
 34
 Placing the Ninth Circuit's comments into the frame in which they were made diminishes their precedential value in this case. We believe the issue was properly analyzed by the district courts in both Gerena-Valentin and Zaldivar I, and we are persuaded by their reasoning.
 
 C.
 
 35
 We acknowledge the Act should be given a broad construction, Allen v. State Board, 393 U.S. at 567, 89 S.Ct. at 832, but granting broad scope to remedial legislation does not mean the court should apply the law to acts or circumstances beyond the pale that Congress has adopted. The congressional purpose in expanding the Act to include the minority language provisions was to give "meaningful assistance to allow the voter to cast an effective ballot." S.Rep. No. 295, 94th Cong., 1st Sess. 30, reprinted in 1975 U.S.Code Cong. & Admin.News 774, 799. The view adopted by the district court takes the Act into activity outside of the casting of a ballot and improperly broadens the scope of the law.
 
 II.
 
 36
 We also hold the district court erred in the deference it accorded the contents of 28 C.F.R. Sec. 55.19(a). While we agree that deference should be given administrative interpretations of law, we believe the principle was misapplied here. First, the district court overlooked the context within which Sec. 55.19(a) was adopted. See, 28 C.F.R Sec. 55.14(a): "This subpart [Secs. 55.14-55.21] sets forth the views of the Attorney General with respect to the requirements of section 4(f)(4) ... concerning the provision of minority language materials...." That the tenor of the applicable sections is suggestive and not directory is made clear by Sec. 55.14(c), which states: "It is the responsibility of the jurisdiction to determine what actions by it are required for compliance with the requirements of section 4(f)(4)...." The critical language of Sec. 55.19(a) relied upon by the district court is preceded by the statement: "It is the obligation of the jurisdiction to decide what materials must be provided in a minority language."[3] Accordingly, if deference should be given to the "views" of the Attorney General, deference should be accorded also to the Attorney General's view that the "jurisdiction" is vested with discretion to determine what materials must be printed in the language of the language minority in the first instance.[4]
 
 
 37
 Moreover, deference granted to an administrative interpretation cannot result in a construction of a statute beyond its limits. Although the plain language of a regulation controls its construction, a regulation should be interpreted in a manner that effectuates the central purpose of the statute it is designed to implement. Emery Mining Corp. v. Secretary of Labor, 744 F.2d 1411, 1414 (10th Cir.1984); Jochum v. Pico Credit Corp. of Westbank, Inc., 730 F.2d 1041, 1047 (5th Cir.1984); Trustees of Indiana Univ. v. United States, 618 F.2d 736, 739, 223 Ct.Cl. 88 (1980). Courts should not interpret an agency regulation to thwart the mandate of the relevant statute. Jochum, 730 F.2d at 1047; Insurance Co. of North America v. Gee, 702 F.2d 411, 414 (2d Cir.1983).
 
 
 38
 The Act is not written so broadly to encompass all forms of petition. "The objective of the Act's provisions is to make the total registration and voting process in the language of the applicable language minority group comparable to the registration and voting process in English." 40 Fed.Reg. 46,080 (1975) (to be codified at 28 C.F.R. Secs. 55.1-55.19). Because the Act applies only to voting and registration, 28 C.F.R. Sec. 55.19(a) cannot be construed to apply to other activities. Cf. United Telecommunications, Inc. v. Commissioner, 589 F.2d 1383 (10th Cir.1978), cert. denied, 442 U.S. 917, 99 S.Ct. 2839, 61 L.Ed.2d 284 (1979) (interpretation of regulation that is reasonable and consistent with the statute is preferred).
 
 III.
 
 39
 The district court erred in concluding that the petitions in this instance were provided by the state, thus making 42 U.S.C. Sec. 1973b(f)(4) operative. The court ignored Colorado Constitution, article V, section I, which specifically reserves the right of initiative to the people. See also Meyer v. Grant, --- U.S. ----, 108 S.Ct. 1886, 1896, 100 L.Ed.2d 425 (1988) (the power of the initiative is a state created right). The trial court assumed that because officers of the state perform some ministerial functions in the process of preparing petitions for circulation, the state acted within the purview of Sec. 1973b(f)(4). However, it was conceded at oral argument that despite those ministerial acts, prior to ballot certification the petition sponsors can withdraw the initiated measure from public consideration at any time, and the state can do nothing to effect the initiated measure.
 
 
 40
 In an attempt to avoid the implication of this circumstance plaintiffs argue that anyone who circulates a petition is engaging in "state action." The argument begs the issue because so long as the right of initiative remains reserved to the people, the state cannot diminish or impede that process. Meyer, 108 S.Ct. at 1893. Under the Colorado constitution, one who circulates an initiative petition exercises an individual right solely for the circulator and not for the state.
 
 
 41
 To argue the ministerial acts required of state officers alter the constitutional scheme mischaracterizes the process. The acts performed by those officers are designed primarily to make the initiative process fair and impartial,[5] and do not constitute providing the petitions to the electorate. At most, the acts of the state officers could be regarded as "regulatory," but state regulation is insufficient to convert private action into state action. See Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).[6]
 
 
 42
 The judgment of the United States District Court for the District of Colorado is REVERSED and the preliminary injunction is VACATED. The case is REMANDED for further proceedings. Plaintiffs' motion for a remand for further evidentiary proceedings is DENIED as moot.
 
 
 43
 BALDOCK, Circuit Judge, specially concurring.
 
 
 44
 Article III of the United States Constitution restricts the jurisdiction of the federal courts to "cases and controversies." U.S. Const. art. III, Sec. 2, cl. 1. Constitutional and prudential limitations arising out of Article III--ripeness and mootness--prohibit our reaching the merits in a dispute which very likely presents questions of only academic concern. See, e.g., Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937); Gulf Publishing Co. v. Lee, 679 F.2d 44, 46 (5th Cir.1982). When the injunction was dissolved on October 12, 1988, this appeal was not ripe for adjudication on the merits, and was probably moot because there may have been enough valid signatures to certify the initiative for the ballot. Hence, I cannot join in the majority opinion.
 
 
 45
 The district court enjoined the Colorado election on the "English Only" initiative after striking signatures from petitions deemed to have been circulated in certain "bilingual" counties in violation of the Voting Rights Act, 42 U.S.C. Secs. 1973b(f)(4), 1973aa-1a(c). Montero v. Meyer, 696 F.Supp. 540, 551 (D.Colo.1988). The court expressly stated, however, that "[i]f sufficient signatures remained to satisfy the requirement of Colorado law for certifying an initiative for the ballot after all signatures appearing on petitions circulated in any of the 12 'bilingual counties' had been stricken, then failure to comply with the Voting Rights Act would not prohibit the ballot initiative from proceeding." Id. at 550.
 
 
 46
 The information contained in the appellate record shows 50,668 signatures of state-registered voters were necessary for placement of the initiative on the ballot. See Colo.Rev.Stat. Sec. 1-40-105 (Supp.1987). Although the Secretary of State originally accepted 98,593 signatures, the district court struck 61,719, leaving only 36,874 signatures applicable towards the requisite number. On September 19, 1988, the Secretary issued a ruling that 13,794 additional signatures were required for ballot certification.
 
 
 47
 In accordance with the district court's opinion, the Secretary then received affidavits of petition circulators to rebut the presumption that petitions containing signatures of persons listing their address as within a bilingual county were, in fact, circulated in that county. See Montero, 696 F. Supp. at 550. After reviewing the affidavits, the Secretary of State concluded that 13,665 more signatures were proper, but that the total of 50,539 (36,874 + 13,665) was still insufficient.
 
 
 48
 The private defendants subsequently withdrew the original petitions and later resubmitted them under the authority of Colo.Rev.Stat. Sec. 1-40-109 (Supp.1987) with 35,407 additional signatures gathered consistent with the district court's order. These new signatures raised the total to 85,946 (35,407 + 50,539); 35,278 (85,946 - 50,668) more than needed to place the initiative before the electorate. The Secretary of State certified the signatures on October 5, 1988.[1]
 
 
 49
 Of course, these facts and numbers are not conclusive. Rather, I proffer them to illustrate the need for further factual findings by the district court before we express our views with what quite possibly is now an "advisory opinion on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969). Because prematurely reaching the merits of a case is beyond the proper role of the federal judiciary and may lead to ill-advised adjudication, courts must avoid needless lawmaking. 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3532.1 at 115 (2d ed. 1984).
 
 
 50
 The doctrine of ripeness, designed to prevent courts from adjudicating theoretical disagreements, requires the evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). "Inasmuch as 'ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern.' " In re Grand Jury, 604 F.2d 69, 72 (10th Cir.1979) (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974)). Moreover, further factual development in certain instances may be considered essential in triggering ripeness on appeal. L. Tribe, American Constitutional Law Sec. 3-10 at n. 24 (2d ed. 1988).
 
 
 51
 On the other hand, a case is moot if the passage of time has eliminated the necessity of its resolution. "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). Consequently, if mootness evolves on appeal, "the judgment below normally is vacated with directions to dismiss the complaint." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 288 n. 9, 102 S.Ct. 1070, 1074 n. 9, 71 L.Ed.2d 152 (1982).
 
 
 52
 In this instance, the private defendants apparently garnered sufficient signatures to place the initiative on the ballot without resort to the signatures obtained in the bilingual counties after the district court entered its preliminary injunction. Due to time constraints, however, we held oral argument on the merits of this appeal without first having an opportunity to consider developments subsequent to entry of the injunction. Nevertheless, twelve days remained between the time the injunction was dissolved upon the merits, October 12, 1988, and the start of absentee voting in Colorado, October 24, 1988. This was ample time for a partial remand to the district court for a determination within seven days as to whether sufficient signatures now exist to satisfy the requirements of Colorado law for certifying the initiative for the ballot, excluding all signatures appearing on petitions circulated in the bilingual counties. Only upon receipt of these additional findings could we properly bring this appeal to final disposition by dismissing it as moot or addressing its merits. See United States v. Affleck, 765 F.2d 944, 953-54 (10th Cir.1985) (en banc); Battle v. Anderson, 594 F.2d 786, 793 (10th Cir.1979) (cases partially remanded for factual findings while appellate court retained jurisdiction). Therefore, I am unable to express an opinion on the issue of whether the Voting Rights Act applies to the Colorado initiative process.
 
 
 53
 However, I do agree that the preliminary injunction was correctly lifted on October 12. Given the extreme likelihood that the appeal was moot, the injunction was unwarranted and the election machinery should have been allowed to proceed. For these reasons, I specially concur.
 
 
 
 [1]
 The Secretary of State and the State of Colorado are also defendants in this action. We distinguish these public defendants from the private defendants
 
 
 [2]
 Defendants raise another issue which we do not consider, whether the Act can be applied to the right of initiative. Plaintiffs contend the initiative process is "core political speech," Meyer v. Grant, --- U.S. ----, 108 S.Ct. 1886, 1892-93, 100 L.Ed.2d 425 (1988), which cannot be fettered by the imposition of the Act. Because the district court did not consider this argument, and it is not essential to our analysis, we will not address it
 
 
 [3]
 The Justice Department considers 28 C.F.R. Secs. 55.1-55.21 (1987) "interpretive guidelines." 41 Fed.Reg. 29,998 (1976); 41 Fed.Reg. 16,744 (1976). For regulations which are directory and not merely suggestive, compare 28 C.F.R. Secs. 51.1-51.67. The latter provisions are mandatory and subject to great deference. See City of Pleasant Grove v. United States, 479 U.S. 462, 107 S.Ct. 794, 93 L.Ed.2d 866 (1987); United States v. Board of Comm'rs, 435 U.S. 110, 131, 98 S.Ct. 965, 979, 55 L.Ed.2d 148 (1978)
 
 
 [4]
 Long before the circulation of this petition, the state analyzed the Act and its minority language provisions and concluded they did not apply to the Colorado initiative process. In a formal opinion made part of this record, the Colorado Attorney General advised the Secretary of State that initiated petitions need not be bilingual. The district court, however, rejected the Attorney General's opinion despite the deference Sec. 55.14(c) suggests should be accorded the state
 
 
 [5]
 The Secretary of State, Attorney General, and Director of the Legislative Drafting Office (constituting the "Board") fix a "fair and proper title", submission clause, and "a clear, concise summary of the proposed ... constitutional amendment." Colo.Rev.Stat. Sec. 1-40-101(2). The summary must be "true and impartial." Id
 
 
 [6]
 Plaintiffs also argue that defendant Philips, who is a state legislator, used resources available to her and thus, the state provided affirmative action in the circulation process. Nevertheless, Ms. Philips' use of these resources cannot constitute action by the state simply because one legislator, acting on her own, cannot exercise the power of the executive branch of state government
 
 
 [1]
 Furthermore, because the parties appear to have stated incorrectly during the hearing on the preliminary injunction that El Paso County, Colorado, was covered by the bilingual printing requirements of the Voting Rights Act, the district court may have improperly struck 29,158 signatures. See 53 Fed.Reg. 736 (Jan. 12, 1988) (listing counties covered by Secs. 1973b(f)(4), 1973aa-1a(c))